**SO ORDERED.**

**SIGNED September 30, 2011.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

```
              UNITED STATES BANKRUPTCY COURT
               WESTERN DISTRICT OF LOUISIANA

IN RE:

EAST CAMERON PARTNERS, L.P.,            CASE NO. 08-51207

     Debtor                            Chapter 11

----------------------------------------------------------------

EC OFFSHORE PROPERTIES, INC.,

     Plaintiff

VERSUS                                 ADVERSARY NO. 10-05014

OPEN CHOKE EXPLORATION, LLC,
OPEN CHOKE ENERGY, LLC,

     Defendants

----------------------------------------------------------------
                       MEMORANDUM RULING
----------------------------------------------------------------
```

EC Offshore Properties, Inc. ("EC Offshore") asserts fraudulent transfer claims under 11 U.S.C. §§ 544, 548, and 550

against defendants Open Choke Exploration, LLC ("Open Choke") and Open Choke Energy, LLC. These claims were assigned to EC Offshore as part of the sale of substantially all of the assets of the debtor, East Cameron Partners, L.P., pursuant to 11 U.S.C. § 363. The present matter before the court is Open Choke's Motion for Litigious Redemption of Litigation (the "Redemption Motion") pursuant to Louisiana Civil Code Article 2652. Open Choke seeks to terminate the adversary proceeding by "redeeming" the assigned fraudulent transfer claims under Article 2652. The court took the motion under advisement following a hearing. After considering the parties' arguments and the relevant authorities, the court rules as follows.

## JURISDICTION

The court has jurisdiction over the matters asserted in this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a). This matter is a core proceeding in which this court may enter a final order pursuant to  28 U.S.C. §157(b)(2)(I) and (J).  The following Memorandum Ruling shall constitute the court's findings of fact and conclusions of law.

## BACKGROUND

On October 16, 2008, East Cameron Partners, L.P. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  East Cameron was an independent oil and gas exploration and

-2-

production company that owned leasehold interests in a producing natural gas and condensate field in federal waters adjacent to Cameron Parish, Louisiana. East Cameron's leasehold interests consisted of a 100% undivided record title interest with a 79.87% net revenue interest subject to certain overriding royalty interests in East Cameron Block 72 ("Block 72"). These lease interests arose from federal oil and gas leases governed by the Outer Continental Shelf Lands Act ("OCSLA") and administered by the Minerals Management Service of the United States Department of the Interior. On February 9, 2010, East Cameron filed a motion to approve the sale of substantially all of its assets pursuant to 11 U.S.C. § 363(f) of the Bankruptcy Code to EC Offshore, including East Cameron's interest in Block 72. East Cameron and EC Offshore entered into an asset purchase and sale agreement (the "Asset Purchase Agreement") in connection with the proposed sale on February 29, 2010. East Cameron's sale motion was contested and, on March 11, 2010, the court held a hearing on the motion. On March 21, 2010, the court entered an order approving the sale. The sale closed on May 11, 2010. East Cameron's liquidating Chapter 11 Plan was confirmed on December 9, 2010.

East Cameron filed the present adversary proceeding on February 26, 2010. East Cameron's complaint asserts fraudulent transfer claims under 11 U.S.C. §§ 544, 548, and 550 against Open

-3-

Choke and Open Choke Energy, LLC ("Open Choke Energy"). Open Choke Energy was the general partner of East Cameron, and both Open Choke Exploration and Open Choke Energy were controlled by Campbell Evans. Evans had been a principal of East Cameron. The complaint alleges that East Cameron and Open Choke entered into a farmout agreement involving Block 72 (the "Block 72 Farmout Agreement") in November 2007. (Complaint at ¶¶ 26-27). The Block 72 Farmout Agreement granted Open Choke Exploration the right to develop hydrocarbons at depths below 10,400 feet. East Cameron's complaint contends that this transfer of rights under the Block 72 Farmout Agreement is avoidable as a fraudulent transfer. (Id. at ¶¶ 36-43). The Asset Purchase Agreement includes the assignment of any fraudulent transfer claims arising from the Block 72 Farmout Agreement in addition to East Cameron's remaining interest in Block 72. (Order Approving Motion to Sell, Exh. A [Dkt. #539]). Following the closing of the sale, EC Offshore was substituted as the plaintiff in this proceeding. Open Choke subsequently filed the present Redemption Motion asserting that the assignment of East Cameron's fraudulent transfer claims is subject to "redemption" under Louisiana Civil Code Article 2652.

## DISCUSSION

A.   **Article 2652 and the Assignment of Litigious Rights.**

Chapter 15 of the Louisiana Civil Code governs the assignment of rights. Civil Code Article 2642 provides that "all rights may

-4-

be assigned, with the exception of those pertaining to obligations that are strictly personal." Article 2652 governs the sale of litigious rights as a specific category of assignments subject to Chapter 15. Article 2652 provides:

> When a litigious right is assigned, the debtor may extinguish his obligation by paying to the assignee the price the assignee paid for the assignment, with interest from the date of the assignment. A right is litigious, for that purpose, when it is contested in a suit already filed. Nevertheless, the debtor may not thus extinguish his obligation when the assignment has been made to a co-owner of the assigned right, or to a possessor of the thing subject to the litigious right.

Open Choke contends that it is entitled to "redeem" the assignment of litigious rights to EC Operating pursuant to Article 2652. Open Choke argues that the present adversary proceeding had been commenced and Open Choke had filed its answer prior to the court's entry of the order approving the sale of the claims. Open Choke offers to redeem EC Offshore's litigious rights by paying the price paid for the assignment of these rights pursuant to the Asset Purchase Agreement.[1] If Open Choke successfully redeems these claims under Article 2652, EC Operating's claims under sections

---

[1] Open Choke initially argued that it was entitled to redeem EC Offshore's litigious rights by paying no money based on testimony during the hearing to approve the sale. According to Open Choke, this testimony shows that the debtor and EC Offshore assigned no value to these claims in connection with the Asset Purchase Agreement. Open Choke, however, now takes the position that it will pay the value the court finds was assigned to these claims.

-5-

544, 548, and 550 will be extinguished upon payment of the "price [EC Operating] paid for the assignment." La. Civ. Code Art. 2652.

EC Offshore opposes Open Choke's Redemption Motion on multiple grounds. First, EC Offshore contends that the assignment of any avoidance claims was incident to the sale of real property – the debtor's interest in Block 72 – and thus is not the type of sale of litigious rights contemplated in Article 2652. Second, EC Offshore argues that Article 2652 does not apply to judicial sales pursuant to the Louisiana Supreme Court's decision in <u>Bluefields S.S. Co. v. Lala Ferreras Cangelosi S.S. Co</u>., 63 So. 96 (La. 1913). According to EC Offshore, the assignment of litigious rights pursuant to the Asset Purchase Agreement was a judicial sale because it required approval by the court under 11 U.S.C. § 363(f) before it could be consummated.[2] Third, EC Offshore argues that the Bankruptcy Code preempts Article 2652 with respect to a sale of federal claims approved by the court under 11 U.S.C. § 363. Finally, EC Offshore argues that Article 2652 is inapplicable because the Asset Purchase Agreement and the resulting sale of litigious rights is governed by Texas law, not Louisiana law. The court will first address EC Offshore's choice-of-law argument because the determination of the applicable law to Open Choke's rights is a threshold issue that may

---

[2]The sale was "free and clear" of any interest in the property, but the sale order specifically preserves Open Choke's rights and defenses with respect to the assigned fraudulent transfer claims. (Order Approving Motion to Sell at 18).

-6-

be dispositive of the Redemption Motion. See Prescott v. North Lake Christian School, 369 F. 3rd 491, 496 (5th Cir. 2004).

## B. Does Federal or State Law Govern?

The first question for the court is whether federal or state substantive law governs Open Choke's rights with respect to the assignment of East Cameron's fraudulent transfer claims. In Martin v. Morgan Drive Away, Inc., 665 F. 2d 598 (5th Cir. 1982), the Fifth Circuit addressed whether an assignment of federal antitrust claims was void under state-law champerty restrictions. The court acknowledged that federal law does not preclude the assignment of federal antitrust claims, but nevertheless looked to state law as to whether the assignment was champertous. Id. at 604. In doing so, the court distinguished between the federal nature of the claims and the law governing the *form* of the assignment of the claims. Id. ("Our concern here, however, is not with the substance of assignable claims, but the form in which the claim may be assigned.") (citing Sampliner v. Motion Picture Patents Co., 255 F. 244 (2d Cir. 1918)). The Fifth Circuit then performed a choice-of-law analysis and concluded that Louisiana law on the sale of litigious rights governed the validity of the assignment.[3] Turning

---

[3] Specifically, the court addressed whether Louisiana Civil Code Article 2447 barred the assignment of federal antitrust claims in that case. The version of Article 2447 that the court applied at the time prohibited the sale of litigious rights to officers of the court. The court concluded that the assignment did not run afoul of Article 2447 because the litigious right was not assigned to an officer of the court.

-7-

to the present case, the rights that Open Choke seeks to assert under Article 2652, like the provisions of Article 2447 addressed in <u>Martin</u>, are based on the form of the assignment. Accordingly, as <u>Martin</u> makes clear, state law governs any rights Open Choke may have as a result of the assignment of the claims in this case to EC Offshore. <u>See</u> <u>also</u>, <u>Nicholls Pointing Coulson, Ltd. v. Transportation Underwriters of Louisiana, Inc</u>., 777 F. Supp. 493, 496 (E.D. La. 1991) ("There is no federal law of assignments, and the Fifth Circuit has held that the validity of a particular assignment of a federal cause of action is governed by the state law that the appropriate conflict of laws principles dictate should control the contract.") (Citing <u>Martin</u>).

**C.   Which Choice-of-Law Rules Apply?**

Given that state law governs the claims assignment and Open Choke's rights arising from the assignment, the court must next determine which state's law applies. As the court noted in <u>Nicholls Pointing Coulson</u>, the court must look to "the appropriate conflict of laws principles" to determine the applicable law. In <u>Klaxon Co. v. Stentor Elec. Mfg.</u>, the Supreme Court held that a court must apply the choice-of-law rules of the forum where it sits when the court's jurisdiction is based on diversity of citizenship. <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Given that this court's jurisdiction over the present matter is grounded on 28 U.S.C. § 1334(b), not

-8-

diversity jurisdiction under 28 U.S.C. § 1332, the court is not explicitly bound by Klaxon. Nevertheless, bankruptcy courts generally apply the choice-of-law rules of the forum in which they sit over state-law claims that do not implicate federal policy. Woods-Tucker Leasing Corp. of Ga. v. Hutcheson-Ingram Dev. Co., 642 F.2d 744, 748 (5th Cir. 1981); In re Gaston & Snow, 243 F.3d 599, 605 (2d Cir. 2001); In re Merritt Dredging Co., Inc., 839 F.2d 203, 206 (4th Cir. 1988); In re Southwest Equip. Rental, Inc., No. Civ. 1-90-62, 1992 WL 684872, at *9 (E.D. Tenn. July 9, 1992); see also Warfield v. Carnie, No. 3:04-CV-633-R, 2007 WL 1112591, at *7 (N.D. Tex. Apr. 13, 2007). While the assigned claims are federal causes of action under 11 U.S.C. §§ 544, 548, and 550, Open Choke's rights arising from the assignment of these claims is purely a question of state law governing contracts and assignments. Nicholls Pointing Coulson, Ltd., 777 F. Supp. at 496; Martin, 665 F. 2d at 604. Accordingly, the law applicable to the claims assignment and Open Choke's rights does not implicate federal policy to the extent that the court must apply federal choice-of-law rules. See, e.g., In re Endeavour Highrise, L.P., 432 B.R. 583, 628 (Bankr. S.D. Tex. 2010) ("Issues regarding contract interpretation and enforcement do not involve the type of important federal bankruptcy policy" that would require application of federal choice-of-law rules) (distinguishing Tow v. Rafizadeh (In re Cyrus II Partnership), 413 B.R. 609, 613 (Bankr. S.D. Tex. 2008)). In light of Klaxon and Woods-Tucker Leasing, the court will look to Louisiana choice-of-law rules.

-9-

**D.    What Are the Applicable Louisiana Choice-of-Law Rules?**

Louisiana's choice-of-law rules are found in Louisiana Civil Code Articles 3515 *et* *seq*.  Article 3515 sets forth the general policy underlying Louisiana's conflicts rules:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

Civil Code Article 3537 addresses the general choice-of-law rule applicable to conventional obligations:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of

-10-

> facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

A threshold question in applying these provisions is whether there is a true conflict, a false conflict, or no conflict among the laws of the states that have a connection to the contract. In re Combustion, Inc., 960 F.Supp. 1056, 1067 (W.D. La. 1997); Tolliver v. Naor, 115 F.Supp.2d 697, 701 (E.D. La. 2000). If the laws of two states are substantially identical, then no choice-of-law analysis is necessary and the court simply applies the law of the forum state. Schneider Nat'l Transp. v. Ford Motor Co., 280 F.3d 532, 536 (5th Cir. 2002); W.R. Grace & Co. v. Cont'l Cas. Co., 896 F.2d 865, 874 (5th Cir. 1990) (if the law of all relevant jurisdictions is the same, a court need not "go through the motions" of making a choice of law). Assuming that there is a true conflict of law with respect to an issue, the court must look to Louisiana's choice-of-law rules.

**E. Does Louisiana Civil Code Article 2652 Apply To The Assignment of the Debtor's Claims?**

In the present case, the Asset Purchase Agreement and claims assignment have contacts with Texas and Louisiana: the parties (including Open Choke) are Texas entities with their principal places of business in Texas, the Asset Purchase Agreement contains a Texas choice-of-law clause, the Asset Purchase Agreement was formed and approved in Louisiana, and the subject matter of the assignment are federal bankruptcy claims pending in Louisiana.

-11-

There is also a true conflict between Texas and Louisiana law because Texas law allows the unrestricted assignment of claims without any corresponding right to redeem the sale of litigious rights. <u>See</u>, <u>e.g.</u>, <u>Global Drywall Systems, Inc. v. Coronado Paint Co., Inc.</u>, 104 S.W.3d 538, (Tex. 2003) ("The general rule in Texas is that causes of action are freely assignable.") Applying Louisiana conflict rules, the court must first consider the relevant contacts to Louisiana and Texas, including:

- the parties' contractual selection of Texas law in the Asset Purchase Agreement;

- the state of formation and principal business places of the parties; and

- the location of the negotiation formation and performance of the Assets Purchase Agreement.

The court must then evaluate these contacts in light of the applicable public policy of Texas and Louisiana.

1. **The Contractual Choice-of-Law Clause in the Asset Purchase Agreement.**

EC Offshore contends that the choice-of-law clause in the Asset Purchase Agreement precludes the application of Article 2652 because the assignment is governed by Texas law. Section 17(h) of the Asset Purchase Agreement provides that "this agreement shall be governed by and construed in accordance with the laws of the State of Texas." Choice-of-law clauses like section 17(h) of the Asset Purchase Agreement are enforceable under Louisiana law:

> All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public

> policy of the state whose laws would otherwise
> be applicable under Article 3537.

La. Civ. Code Art. 3540.  Applying Article 3540 to section 17(h), Texas law governs the Asset Purchase Agreement and the assignment of claims as far as the rights of the parties to the agreement.  It is less clear, however, that Article 3540 and section 17(h) can be read to bind Open Choke to the contracting parties' selection of Texas law.  Article 3540 refers to the law "expressly chosen or clearly relied upon by the **parties**..."  (emphasis added).  Open Choke is not a party to the Asset Purchase Agreement, and thus is not a party to the choice-of-law selection in section 17(h) of that agreement.  Nevertheless, even if section 17(h) of the Asset Purchase Agreement is not contractually binding on Open Choke and dispositive of the court's choice-of-law analysis, is the contracting parties' selection of Texas law relevant to the court's choice-of-law analysis under Articles 3515 and 3537?

Louisiana's choice-of-law rules for conventional obligations require the court to consider the policies "of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state," as well as the policies of "facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other."  La. Civ. Code Art. 3515, 3537.  Accordingly, "[i]f the parties reasonably expected that the law of

-13-

a certain state would govern some or all aspects of their contractual relationship, such expectation is clearly appropriate for consideration in determining whether the state's law should be applied to a dispute, even if the parties did not expressly state a choice of applicable law in their agreement." Berard v. L-3 Communications Vertex Aerospace, LLC, 35 So.3d 334, 343 (La. App. 1st Cir. 2010). Contractual choice-of-law clauses express the expectations of the contracting parties, and these expectations must be given weight under Articles 3515 and 3537. See, e.g., Marsala v. Mayo, 2007 WL 3245434 (E.D. La. Nov. 2, 2007) (application of Georgia law "upholds the expectations of the parties, given the parties' choice-of-law clause..."). Accordingly, section 17(h) of the Asset Purchase Agreement is relevant to the court's choice-of-law analysis even if it is not dispositive under Article 3540.

With respect to the parties' expectations, EC Operating and East Cameron selected Texas law as the legal framework governing the Asset Purchase Agreement. This agreement encompasses not only the sale of the debtor's leasehold interest in Block 72, but also East Cameron's claims arising from the Block 72 Farmout Agreement. As EC Operating points out in its brief, because the Block 72 Farmout Agreement controls the development of hydrocarbons from Block 72 at depths below 10,400 feet, the sale of East Cameron's leasehold rights in Block 72 is necessarily intertwined with the

-14-

any rights East Cameron had to challenge the Farmout Agreement under sections 544, 548, and 550 of the Bankruptcy Code.  Given this connection between the claims assignment and the transfer of the leasehold interest, nothing in the Asset Purchase Agreement indicates that the contracting parties intended or expected that the claims assignment could be treated differently from the remainder of the contract in terms of the governing law.  Indeed, on its face, section 17(h) is applicable to the contract as a whole, including the claims assignment.  Ignoring section 17(h) and applying Louisiana law to the claims assignment would, therefore, upend the contractual expectations of the parties.  It would also ignore the dictate of Louisiana's choice-of-law rules that the court attempt to "minimiz[e] the adverse consequences that might follow from subjecting a party to the law of more than one state." Specifically, the application of Article 2652 would result in the release of EC Operating's claims and, ultimately, the dismissal of the adversary proceeding.  In contrast, if the law of the contract is applied to Open Choke's rights, EC Operating would face no such bar to pursuing the assigned fraudulent transfer claims. See also Nicolls Pointing Coulson, Ltd., 777 F.Supp. at 496 (suggesting that the law governing the validity of an assignment of litigious rights should be governed by the same law "that the appropriate conflict of laws principles dictate should control the contract.")

Would application of Texas law to Open Choke's rights undermine its justified expectations?  While Open Choke was not a

-15-

party to the Asset Purchase Agreement, Open Choke was a party in interest in East Cameron's bankruptcy case and had the opportunity to participate in the hearing on East Cameron's sale motion. Open Choke had the opportunity to review the contents of the Asset Purchase Agreement, and ultimately reserved its rights and defenses with respect to the transferred avoidance claims. However, Open Choke's reservation never explicitly addressed the contracting parties' selection of Texas law in the Asset Purchase Agreement and how that selection would impact Open Choke's rights and defenses. Under these circumstances, to the extent that Open Choke's expectations are relevant under Articles 3515 and 3537, the court cannot conclude that the application of Texas law would undermine Open Choke's justified expectations. In sum, the selection of Texas law in section 17(h) of the Asset Purchase Agreement weighs in favor of the application of Texas law to Open Choke's rights arising from the claims assignment.

## 2. The "Domicile, Habitual Residence, or Business" of the Parties.

The court next considers the "domicile, habitual residence, or business" of the parties. In Martin, the court concluded that the relevant contacts weighed in favor of Louisiana law, in part, because all of the parties to the assignment resided in Louisiana. In contrast, all of the parties in the present case are based in Texas. EC Offshore is a Delaware corporation with its principal place of business in Dallas, Texas. Open Choke is a Texas limited

-16-

liability company with its principal place of business in Houston, Texas. Moreover, East Cameron is a Texas limited partnership with its principal place of business in Houston, Texas. Accordingly, the location of the parties weighs in favor of the application of Texas law.

### 3. The Place of Negotiation, Performance, and Subject Matter of the Asset Purchase Agreement.

Open Choke contends that the contacts with Louisiana predominate because the Asset Purchase Agreement was negotiated and executed in Louisiana, and the agreement was approved as part of a Louisiana-based bankruptcy case. Moreover, the federal bankruptcy claims assigned as part of the Asset Purchase Agreement are pending in Louisiana. The court agrees that these factors, standing alone, weigh in favor of the application of Louisiana law.[4] However, the weight of these factors in the court's choice-of-law analysis must reflect that the parties selected their governing law, not their forum. The parties' selection of Texas law to govern the contract does not foreclose the parties from pursuing their fraudulent transfer claims in a Louisiana forum; nor does the pursuit of those

---

[4] Open Choke also points out that the properties subject to the Block 72 Farmout Agreement are located adjacent to Louisiana. The court gives this factor little weight. The present avoidance claims focus on the transfer resulting from Farmout Agreement and the circumstances of that argument. The location of the properties has little relevance to these claims. Moreover, the Farmout Agreement contains a choice-of-law clause which, like the Asset Purchase Agreement, provides that Texas law governs the agreement.

claims in a Louisiana forum suggest that the contracting parties were not justified in expecting that Texas law would govern the Asset Purchase Agreement and claims assignment in light of section 17(h) of the agreement and Article 3540.[5]

### 4. Assessing These Contacts in Light of the Policy Interests of Texas and Louisiana.

The court's conflicts analysis does not end with identifying the relevant contacts. These contacts must be assessed in light of the policies underlying Article 2652 to determine which state's "policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code Art. 3515; Wendling v. Chambliss, 36 So.3d 333, 338 (La. App. 1st Cir. 2010). While Louisiana does not prohibit the assignment of litigious rights, Article 2652 reflects the Civil Code's suspicion of such assignments by creating a strong disincentive to the assignment of litigious rights. See U.S. v. 12,918.28 Acres of Land in Webster Parish, La., 50 F.Supp. 712, 721-23 (W.D. La. 1943) (tracing the "severe condemnation of the sale of a litigious right" in Roman and French law, and its codification in the civil code). Some courts

---

[5] Open Choke also points out that EC Operating filed a parallel state court suit in the 15th JDC, Lafayette Parish, asserting fraudulent transfer claims under Texas and Louisiana law. This state action is stayed pending the resolution of the present adversary proceeding. According to Open Choke, EC Operating availed itself of a Louisiana forum and Louisiana law. However, the fact that EC Operating availed itself of a Louisiana forum does not conflict with the parties' expectation that, under section 15(h), the claims assignment was to be governed by Texas law.

have opined that the purpose of Article 2652's redemption and release remedy is to "prevent the purchasing of claims from avarice or to injure the debtor." Smith v. Cook, 180 So. 469, 472-73 (La. 1938). According to the Louisiana Supreme Court in Smith, "the lawmakers have deemed it advisable from a standpoint of equity and public policy, in the sale of a matter in litigation, to favor the party against whom the matter in litigation is transferred over one who speculates in lawsuits." Id. at 473; see also 12,918.28 Acres of Land in Webster Parish, La., 50 F.Supp. at 723 (quoting Beudant, 2 Court de Droit Civil Fracas 326 (1938)).[6] Other courts have explained that Article 2652 is intended to "dissuade trafficking in lawsuits." Peoples Homestead Federal Bank & Trust v. Laing, 637 So.2d 604, 606 (La. App. 2d Cir. 1994). The common thread that runs throughout these policy declarations is a concern over unregulated assignments of litigious rights and the potential for

---

[6]Specifically, the court in 12,918.28 Acres of Land quotes the following passage from Beudant:

> The buyer of litigious rights – and this is particularly true of the speculators who make it a business - exerts pressure on the seller, so as to buy it at a very cheap price; a high price is never paid for a right which is of questionable worth and which may have no value; after which, the buyer pursues without mercy the one against whom he bought the right, so as to obtain the most possible. Often, too, the buyer of a litigious right is one who, through passion, looks to buy a right against one whom he dislikes, with the design of molesting this person with unseasonable, and obstreperous prosecutions- even scandalous prosecutions.

50 F. Supp. at 723.

abuse created by such assignments.  Article 2652 addresses these policy concerns by eliminating the profit incentive from assignments of litigious rights.

Does the assignment of East Cameron's fraudulent transfer claims implicate these policy concerns?  This claims assignment of was not an unregulated, stand-alone assignment of litigious rights, but was part of the sale of substantially all of East Cameron's assets within the framework a bankruptcy case under Chapter 11 of the Bankruptcy Code.  This transaction could not be consummated without judicial scrutiny and approval under 11 U.S.C. § 363(f). The court approved the sale after a hearing.  In approving the sale, the court found that the proposed sale would provide a greater recovery to the debtor's estate than would be provided by other available alternatives, and that the terms of the Asset Purchase Agreement were fair and reasonable.  (Order Approving Motion to Sell [Dkt. #539]).  The court also found that EC Offshore was a good faith buyer within the meaning of 11 U.S.C. § 363(m).[7] The court's role in reviewing and approving the sale under section

---

[7] Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

-20-

363, the fact that the assignment of claims was part and parcel of the sale of substantially all of East Cameron's assets within the framework of a Chapter 11 case, and the court's findings that the sale was fair and reasonable are all factors that protect against the abusive conduct that Article 2652 seeks to control. Louisiana courts have recognized cases where certain assignments of litigious rights fall outside of the scope of Article 2652 based on the nature and context of the assignment. For example, in <u>Bluefields S.S. Co</u>., the court held that Article 2652 pertained solely to conventional sales and not to the forced sale of a litigious right by a state court receiver. 63 So. 96. Similarly, in <u>Peoples Homestead Federal Bank & Trust</u>, the court held that Article 2652 did not apply to pending litigation that was assigned through the Resolution Trust Corporation ("RTC") because those assignments did not implicate the policy concerns reflected in Article 2652. 637 So.2d at 606 ("Subjecting the RTC or assignees to the litigious redemption doctrine would wreak havoc on the agency's ability to perform its statutorily mandated function of managing failed thrifts.") While <u>Bluefields</u> and <u>Peoples Homestead Federal Bank & Trust</u> are not directly on point, the assignments in both cases were characterized by court oversight or federal policy goals that favored the assignment. In <u>Bluefields</u>, the court distinguished between conventional sales and forced sales pursuant to court order. The section 363 sale of East Cameron's assets was not

-21-

strictly a "forced" sale.  However, like <u>Bluefields</u>, it was a court-supervised sale that provided important checks against the abusive practices that Article 2652 was intended to control. Moreover, like <u>Peoples Homestead</u>, the assignment of East Cameron's claims implicated broader federal policy goals embodied in the Bankruptcy Code.  After considering the policies underlying Article 2652 and the nature and context of the claims assignment in the present case, the court concludes that the application of Texas law to the claims assignment and Open Choke's rights arising from that assignment will not "seriously impair" the public policies of Louisiana.

  **5. Texas Law Governs Open Choke's Rights.**

  Considering the contacts and the state public policies at issue, the court concludes that Texas law applies to the claims assignment and to any rights Open Choke may have as a result of that assignment.  The parties' selection of Texas law in section 17(h) of the Asset Purchase Agreement and the parties' contacts with Texas support the application of Texas law.  The fact that the Asset Purchase Agreement was negotiated in Louisiana and the assigned claims are pending in a federal forum in Louisiana does not overcome the parties' expectation that Texas law would govern the claims assignment under section 17(h).  Moreover, application of Texas law will not seriously impair the public policies reflected in Article 2652.  Since causes of action are freely assignable under Texas law

-22-

and Texas recognizes no remedy equivalent to redemption under Article 2652, there are no grounds under Texas law to award Open Choke the relief that it seeks in its Redemption Motion. <u>See</u> <u>Global Drywall Systems</u>, 104 S.W. 3d at 538.

### CONCLUSION

For the foregoing reasons, the court concludes that Article 2652 of the Louisiana Civil Code does not apply to the claims assignment at issue in the present adversary proceeding. Accordingly, Open Choke's Redemption Motion is **DENIED.**

###